Filed 7/14/15; pub. order 7/24/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LESLIE GOLBA et al., | |
| Plaintiffs and Appellants, | G049611 |
| v. | (Super. Ct. No. 30-2011-00472227) |
| DICK'S SPORTING GOODS, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Kim Garlin Dunning, Judge. Affirmed.

Siprut, Todd C. Atkins and Joseph J. Siprut for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

\*       \*       \*

## INTRODUCTION

A fundamental principle of California law, enshrined in the State Bar Act (Bus. & Prof. Code, § 6000 et seq.), is that no person may "practice law in California" unless that person is an active member of the State Bar. (Bus. & Prof. Code, § 6125 (section 6125).) As a corollary principle, no person may recover compensation for practicing law "in California" unless that person was a member of the State Bar or admitted *pro hac vice* at the time the services were performed, or the legal services fall within an exception. (*Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 127, 136-137 (*Birbrower*).)

In this case, those principles lead us to conclude the trial court did not err by denying recovery of attorney fees for work performed by out-of-state counsel who represented the named plaintiff in a class action in California but who had not been admitted *pro hac vice*. We affirm the trial court's order awarding $11,000 in attorney fees and costs out of the $210,000 sought as part of a class action settlement. We also affirm the trial court's decision to reduce the amount of the plaintiff incentive award.

## FACTS AND PROCEDURAL HISTORY

### I.

### The Class Action and Settlement

This class action was filed in May 2011 by Leslie Golba (Plaintiff), individually and on behalf of all others similarly situated, against Dick's Sporting Goods, Inc. (Dick's). The class action complaint alleged violations of the Song-Beverly Credit Card Act of 1971 (Civ. Code, § 1747 et seq.) (specifically, Civil Code section 1747.08), based on Dick's alleged practice of requesting personal information from consumers during credit card transactions.

The litigants reached a settlement providing for class members to receive vouchers worth $15 off any merchandise purchase of $75 or more, $10 off any merchandise purchase of $50 or more, or $5 off a merchandise purchase with no

2

minimum amount required.  In addition, Dick's agreed not to request and record personal identification information, including ZIP codes, from California customers paying by credit card.  The agreement stated, "as a condition of this Agreement, Dick's agrees to continue to comply with California Civil Code section 1747.08, and will not request and record Personal Identification Information, including, but not limited to, Zip codes, of California Dick's store customers who pay for merchandise using a credit card in a manner prohibited by the statute."

Notice of the class and settlement was to be provided in three ways: (1) physically posting notice in each of Dick's California stores, (2) posting notice on Dick's Web site, and (3) posting notice on a specially created settlement Web site.  The proposed settlement also provided that Dick's would not oppose class counsel's application for court approval of attorney fees and costs in the amount of $210,000 and payment to Plaintiff of an "incentive award" in the amount of $3,500.[1]  If approved by the court, those payments were to be made by Dick's directly, separately, and apart from the class benefits bestowed by the settlement agreement.

## II.

### The Two Applications for Out-of-state Counsel to Appear *Pro Hac Vice*

The initial complaint listed Plaintiff's counsel of record as Sean Reis, California State Bar No. 184044, of the law firm of Edelson McGuire, LLP, and several other out-of-state attorneys with the notation "[*p*]*ro hac vice* admittance to be sought."

---

[1]  The settlement agreement stated:  "Dick's agrees not to oppose Class Counsel's application for attorneys' fees and costs of $210,000 (total), subject to Court approval. Plaintiff agrees to not petition the Court for more than $210,000 (total) for attorneys' fees and costs. . . . If the Court approves the Settlement of this Action and an award of attorneys' fees and costs to Class Counsel, Dick's agrees to pay the attorneys' fees and costs approved by the Court up to $210,000 (total) to Class Counsel within fourteen (14) days after (a) the Final Settlement Date, or (b) Plaintiff's Counsel provides Dick's with its Form W-9, whichever is later."

3

The out-of-state attorneys included Joseph J. Siprut of Siprut PC in Chicago, Illinois.[2] Reis signed the complaint and signed an amended complaint filed in June 2011.

In July 2011, Reis filed an application on behalf of Joseph Siprut for his admission to practice *pro hac vice*. With the application, Joseph Siprut submitted a declaration stating he had not applied for admission *pro hac vice* in California within the previous two years. When submitting the application, Reis did not send proper payment and notice to the California State Bar. A court clerk handwrote "No compliance w/ Rule 9.40" across the caption page of the *pro hac vice* application, which bears a second file-stamped date of September 7, 2011. No order was issued on the *pro hac vice* application, and no docket entry was made to reflect the clerk's handwritten notation.

While accepting responsibility for monitoring the *pro hac vice* application, Reis was not aware the application had been denied and, apparently, assumed the *pro hac vice* application had been granted. The name of Joseph Siprut and Siprut PC appeared on various pleadings and court-filed documents, including several stipulations and orders, with the notation Joseph Siprut was appearing *pro hac vice*. Unaware the court had not approved the *pro hac vice* application, Joseph Siprut and an associate at his law firm "expended hundreds of hours prosecuting this case."

Once the proposed class action settlement had been reached, the parties set a hearing date of November 14, 2012, for an unopposed motion for preliminary approval of the settlement. While preparing for this hearing, Joseph Siprut and his staff reviewed the file and were unable to locate an order granting the *pro hac vice* application. He double-checked the online docket, where he could find no order on the application, then accessed the original docket entry for the application, where he did find the court clerk's notation regarding noncompliance with rule 9.40 of the California Rules of Court. He could not find a minute order on the *pro hac vice* application.

_____

[2] Joseph Siprut filed an application to appear in the Court of Appeal *pro hac vice*. The application was granted.

4

On November 9, 2012, soon after learning of the status of the *pro hac vice* application, Reis filed a new application to admit Joseph Siprut *pro hac vice*. On November 14, the trial court set a hearing for December 5, 2012 on for the second *pro hac vice* application and continued to that date the hearing on the motion for preliminary approval of the class action settlement.

On December 4, 2012, the trial court issued a tentative ruling denying the second *pro hac vice* application. Citing rule 9.40(b) of the California Rules of Court,[3] the court stated that application would be denied due to the "great number of pro hac vice applications" that Joseph Siprut had made during the past year.

Joseph Siprut appeared at the hearing on December 5, 2012, along with Todd Atkins, an attorney from Siprut PC, who was a member of the California State Bar. Reis did not appear. The court, affirming the tentative ruling, denied the *pro hac vice* application on the ground that Joseph Siprut had made 12 *pro hac vice* applications in the prior 11 months and there were no special circumstances under rule 9.40(b) of the California Rules of Court which would support granting the application. The court declined to recognize Atkins as counsel of record for Plaintiff because Siprut PC was not counsel of record and no association of counsel for Atkins had been filed. The court took the motion for preliminary approval of the class action settlement off calendar with the option for Plaintiff to refile it at a later time.

## III.

### Approval of Settlement and the Motions for Attorney Fees

In January 2013, Reis filed a consent to associate Atkins as counsel of record for Plaintiff. Atkins thereafter represented Plaintiff at the court hearings and reviewed, edited, and filed documents related to the proposed class settlement.

---

[3] Rule 9.40(b) of the California Rules of Court states: "Absent special circumstances, repeated appearances by any person under this rule is a cause for denial of an application."

In March 2013, a renewed motion for preliminary approval of proposed class settlement was filed. Reis and Atkins appeared on the motion papers as counsel of record for Plaintiff and the putative class. A hearing on the motion was held on March 27 and April 24, 2013, at which Reis and Atkins appeared. In April 2013, Plaintiff filed a motion for attorney fees, costs, expenses, and an incentive award, which sought $210,000 in attorney fees and costs for work performed by class counsel. Dick's honored its agreement not to oppose the motion. On April 24, 2013, at a hearing on the motion for preliminary approval of the settlement, the trial court advised Plaintiff's counsel to refile the attorney fees motion and set it for a hearing on the same date as the hearing on the request for final approval of the settlement.

By order dated May 2, 2013, the trial court granted preliminary approval of the class settlement and provisional class certification.

In August 2013, Plaintiff filed a "Renewed Unopposed Motion" for attorney fees and for an incentive award (which we call the motion for attorney fees). Reis and Atkins appeared on the motion as counsel of record for Plaintiff and the putative class. The motion for attorney fees included declarations from Reis, Atkins, Joseph Siprut, and Plaintiff.

In September 2013, Plaintiff filed an unopposed motion for final approval of the class action settlement. Reis and Atkins appeared on the motion as counsel of record for Plaintiff and the settlement class. On October 2, 2013, a hearing was held on the motion for final approval. Reis and Atkins appeared at the hearing as Plaintiff's counsel.

At the hearing on October 2, Plaintiff's counsel explained that the time to submit a claim was to expire on November 18, 2013, but only two people out of 232,000 potential class members had submitted claims. During a discussion on the issue of attorney fees, the trial court stated: "So you would have, dripping wet, a handful of people out of 232,000 who want this coupon, and yet you want $210,000 in attorney's

6

fees for other than Mr. Reis's appearances and your appearances here . . . ." The court could find "absolutely no benefit really to anybody based on your claims record" and noted that most of the attorney fees sought were incurred by two out-of-state attorneys who had never been admitted *pro hac vice*. The court stated, "I don't think there's any authority to award attorney's fees to somebody who's not admitted to practice in California or admitted specifically for the purpose of a particular case."

The court granted the motion for final approval of the class action settlement and continued the hearing on the motion for attorney fees to December 4, 2013 to permit Plaintiff's counsel to submit additional briefing. An order granting final approval of the class action settlement was entered on October 11, 2013. On November 15, 2013, Plaintiff's counsel submitted supplemental briefing, which for the first time suggested the court grant Joseph Siprut's *pro hac vice* application for admission nunc pro tunc to the date of the first application.

## IV.

### The Trial Court's Order on the Motion for Attorney Fees

On December 4, 2013, the trial court issued a minute order on the motion for attorney fees. The court awarded attorney fees and costs of $11,000 and awarded a plaintiff incentive award of $500.

The court's minute order stated: "As part of the settlement of this class action lawsuit, Plaintiff seeks $210,000 in attorney's fees and costs. Defendant agreed not to contest this request. Per the chart submitted with the first motion for attorney's fees (filed April 15, 2013), counsel represented that this sum includes a lodestar amount of $156,709.50 (based on a total of 317.5 hours spent by 4 different attorneys), expenses of $1,201.83, and a positive multiplier of 1.33. [¶] $120,419.00 was billed by two attorneys who are not admitted to the practice of law in California. On two separate occasions, this court denied Mr. Joseph Siprut's pro hac vice application to represent

7

plaintiff in this case. . . . [¶] Mr. Siprut first applied for pro hac vice admission on July 7, 2011. He simply filed a request for admission and a proposed order; he did not serve either on local California counsel or defense counsel. There is no indication that he paid the State Bar fee for the application or that he served the application on the State Bar. While he put a hearing date and time on the application, he did not appear for a hearing. The court denied the request for failure to comply with Rule 9.40 of the California Rules of Court. The court file with the denial of his motion has always been available to Mr. Siprut online . . . . [¶] Eighteen months later, after the court declined to permit Mr. Siprut to argue the motion for preliminary approval because he was not admitted, he renewed his pro hac vice application, this time serving it on opposing counsel and the State Bar of California. The court denied the application on the merits based on the number of California cases in which Mr. Siprut has represented litigants (Cal. Rules of Court, rule 9.40(b)). Thereafter, Mr. Siprut's firm established a California presence through attorney Todd Atkins. By that time, the motion for preliminary approval of the class action settlement had already been continued once because no attorney admitted in California appeared in court for the first hearing date."

The court disallowed all attorney fees for work performed by out-of-state counsel: "Moving party has not cited any authority that permits this court to award attorney's fees to individuals who are not members of the State Bar of California or admitted to practice pro hac vice. To the extent this court has discretion to award attorney's fees to out-of-state counsel, this court exercises it to deny attorney's fees to out-of-state counsel." The court rejected the argument that Joseph Siprut could and should be admitted *pro hac vice* nunc pro tunc to the date of the first application.

The court allowed attorney fees only for work performed by Reis and Atkins. The lodestar figure for their work was $36,290.50. The court found that much of their work was duplicated by the work of the out-of-state attorneys. The court also found the settlement bestowed no benefit to the class because, of the 232,000 potential class

8

members, only two had submitted claims for coupons and the essence of the settlement was simply that Dick's would comply with California law. The court concluded, "[t]his is not the type of case that justifies a positive multiplier." For the work performed by Reis and Atkins, the court found that an hourly rate of $300 was appropriate and the reasonable number of hours expended was 33. Thus, the court awarded $11,000 in attorney fees and costs. In addition, the court reduced the requested incentive award to Plaintiff from $3,500 to $500. Plaintiff timely filed a notice of appeal from the order on the motion for attorney fees.

## DISCUSSION

### I.

### The Trial Court Did Not Err by Denying Recovery of Attorney Fees for Work Performed by the Siprut PC Out-of-state Attorneys.

A. *An Unlicensed Attorney May Not Be Compensated for Engaging in the Practice of Law in California.*

Plaintiff's reliance on federal authorities and scant mention of California law lead us to begin by stating what should be obvious: Admission to practice law in California state court is governed by California law. Section 6125 provides that "[n]o person shall practice law in California unless the person is an active member of the State Bar." A violation of section 6125 is a misdemeanor. (Bus. & Prof. Code, § 6126, subd. (a).) "Since the passage of the State Bar Act in 1927, persons may represent their own interests in legal proceedings, but may not represent the interests of another unless they are active members of the State Bar." (*Hansen v. Hansen* (2003) 114 Cal.App.4th 618, 621.)

No one may recover compensation for services as an attorney at law in California unless that person was a member of the State Bar at the time those services

9

were performed.  (*Birbrower*, *supra*, 17 Cal.4th at p. 127, citing *Hardy v. San Fernando Valley C. of C.* (1950) 99 Cal.App.2d 572, 576.)  "'Authority to engage in the practice of law conferred in any jurisdiction is not per se a grant of the right to practice elsewhere, and it is improper for a lawyer to engage in practice where he [or she] is not permitted by law or by court order to do so. . . .'"  (*Birbrower*, *supra*, at p. 129.)

Birbrower, supra, 17 Cal.4th 119, is the seminal case on the issue of the meaning of the phrase "practice law in California" in section 6125.[4]  In *Birbrower*, the Supreme Court concluded that an out-of-state law firm could not recover its fees to the extent those fees were generated for legal services performed "in California" because neither the firm nor its lawyers were authorized to practice law in this state.  (*Birbrower*, *supra*, at pp. 124, 135-136.).  In *Birbrower*, a New York law firm entered into an agreement with a client in California to provide legal services pertaining to the investigation and prosecution of claims arising out of a software development and marketing agreement with a corporation having its principal place of business in California.  (*Id.* at pp. 124-125.)  None of the attorneys with the New York law firm was licensed to practice law in California during the period of representation.  (*Id.* at p. 124.)  Attorneys from the New York law firm made trips to California, where they discussed matters related to the legal dispute, provided legal advice, and made strategic recommendations.  (*Id.* at p. 125.)  The dispute settled and never went to arbitration.  (*Ibid.*)  A dispute arose between the New York law firm and the client:  The client sued for legal malpractice, and the law firm sued to recover fees.  (*Id.* at p. 126.)

The trial court concluded the fee agreement was unenforceable because the New York law firm had provided legal services in California without having been admitted to practice in the state.  (*Birbrower*, *supra*, 17 Cal.4th at p. 126.)  The Court of

---

[4]  Plaintiff relegates *Birbrower* to a "*Cf.*" citation in a footnote at page 20 of the appellant's opening brief and does not cite section 6125 or any part of the State Bar Act at all.

10

Appeal denied the New York law firm's petition for a writ of mandate and affirmed the trial court's order. (*Id.* at p. 127.) The Court of Appeal held the New York law firm had violated section 6125. (*Birbrower*, *supra*, at p. 127.)

The California Supreme Court addressed the as yet unresolved issue of the meaning of the term "practice law *in California*" (italics added) under section 6125. (*Birbrower*, *supra*, 17 Cal.4th at p. 128.) The court rejected the proposition that the term "practice law in California" is limited to the situation in which an attorney is physically present in the state when legal services are rendered. (*Id.* at pp. 128-129.) Instead, the court adopted this definition: "In our view, the practice of law 'in California' entails sufficient contact with the California client to render the nature of the legal service a clear legal representation. In addition to a quantitative analysis, we must consider the nature of the unlicensed lawyer's activities in the state. Mere fortuitous or attenuated contacts will not sustain a finding that the unlicensed lawyer practiced law 'in California.' The primary inquiry is whether the unlicensed lawyer engaged in sufficient activities in the state, or created a continuing relationship with the California client that included legal duties and obligations." (*Id.* at p. 128.)

The court explained its definition did not "necessarily depend on or require the unlicensed lawyer's physical presence in the state." (*Birbrower*, *supra*, 17 Cal.4th at p. 128.) Rather, physical presence in California is one factor to consider in deciding whether the unlicensed lawyer has violated section 6125. (*Birbrower*, *supra*, at p. 128.) "For example, one may practice law in the state in violation of section 6125 although not physically present here by advising a California client on California law in connection with a California legal dispute by telephone, fax, computer, or other modern technological means. Conversely, although we decline to provide a comprehensive list of what activities constitute sufficient contact with the state, we do reject the notion that a person *automatically* practices law 'in California' whenever that person practices

11

California law anywhere, or 'virtually' enters the state by telephone, fax, e-mail, or satellite." (*Id.* at pp. 128-129.)

The California Supreme Court held that, under its definition, the New York law firm had practiced law in California in violation of section 6125. (*Birbrower*, *supra*, 17 Cal.4th at pp. 131-135, 140.) The New York law firm had not been admitted *pro hac vice* and did not come within any exception that would permit recovery of fees. (*Id.* at pp. 135-137.) As a consequence, the New York law firm could not receive compensation under the fee agreement for any services performed in California. (*Id.* at p. 137.) "Enforcing the fee agreement in its entirety would include payment for the unauthorized practice of law in California and would allow [the New York law firm] to enforce an illegal contract." (*Ibid.*) The court concluded the fee agreement was enforceable "to the extent it is possible to sever the portions of the consideration attributable to [the New York law firm]'s services illegally rendered in California from those attributable to [the New York law firm]'s New York services." (*Id.* at p. 140.)

B. *Siprut PC Attorneys Engaged in the Practice of Law in California Without Being Admitted* Pro Hac Vice*.*

The motion for attorney fees sought $120,419 in fees (with a multiplier of 1.33) for services rendered by Joseph Siprut and Aleksandra Vold, an associate attorney from Joseph Siprut's law firm. Joseph Siprut was not a member of the California State Bar and was never admitted *pro hac vice* to practice law in California. The first application to admit him *pro hac vice* was denied for failure to comply with rule 9.40 of the California Rules of Court. The second application was denied on the merits. Vold was not a member of the California State Bar, and no application to appear *pro hac vice* was ever filed on her behalf.

Joseph Siprut and Vold engaged in the practice of law in California in violation of section 6125. The class action complaint alleged Dick's engaged in a practice that violated California law. Plaintiff and all of the putative class members were

12

California residents. Plaintiff retained Joseph Siprut and Siprut PC to prosecute the case with the intent that Siprut PC would serve as lead counsel. Siprut PC, not Plaintiff, retained Reis and his law firm and did so only because they had an office in California. In his declaration submitted in support of the motion for attorney fees, Joseph Siprut stated that it was intended that Siprut PC attorneys "would lead the case." In his declaration, Reis stated, "Siprut PC retained me and my firm as Siprut's local counsel because I have a California office." Joseph Siprut and Siprut PC appeared on all the pleadings and court-filed documents up to the point when Joseph Siprut learned the first *pro hac vice* application had been denied. Vold appeared telephonically at a status conference on April 18, 2012.

The settlement agreement identifies class counsel as "Joseph J. Siprut" of "Siprut PC." In his declarations submitted in support of the motions for attorney fees, Joseph Siprut stated: "Throughout this action, my firm has expended a substantial amount of time and advanced costs to *prosecute a statewide class action suit* with no guarantee of compensation or reimbursement in the hope of prevailing against a large, sophisticated company represented by first-rate attorneys. Nonetheless, believing in the importance of consumer class actions, *Siprut PC prosecuted the case* with the type of vigor and skill required to ensure justice for the Class while simultaneously *refusing alternative employment opportunities* with higher likelihoods of success and guarantees of fee payment." (Italics added.) The motion for attorney fees sought compensation for a total of 317.5 hours. Of that amount, 235.8 hours or 74.27 percent was for activities performed by Joseph Siprut (168.4 hours) and Vold (67.4 hours).

The class action complaint, the class action settlement, the motions for attorneys fees, and the declarations submitted with those motions established that Joseph Siprut and Vold, though not physically present in California, had "sufficient contact with the California client to render the nature of the legal service a clear legal representation" and "created a continuing relationship with the California client that included legal duties

13

and obligations." (*Birbrower*, *supra*, 17 Cal.4th at p. 128.)  The attorney fees provision of the settlement agreement is illegal to the extent it includes fees for services rendered by Joseph Siprut and Vold because neither was a member of the California State Bar and neither had been admitted *pro hac vice*.  Their services rendered in this case, therefore, were not compensable.  (*Birbrower*, *supra*, at pp. 135, 137.)

### C.  *The Trial Court Did Not Err by Denying* Pro Hac Vice *Admission Nunc Pro Tunc.*

Plaintiff argues Joseph Siprut's second *pro hac vice* application could, and should, have been granted nunc pro tunc to the date of the first application.  The matter of nunc pro tunc admission *pro hac vice* for Joseph Siprut was first raised in Plaintiff's supplemental briefing in support of the motion for attorney fees, filed in November 2013, a full year after denial of the second *pro hac vice* application.[5]  The trial court considered class counsel's request to grant the second *pro hac vice* application nunc pro tunc, and denied the request.

The trial court has discretion to enter a nunc pro tunc order granting *pro hac vice* admission.  (*United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 624 (*Arroyo Software*).)  We review the trial court's order denying *pro hac vice* admission nunc pro tunc under the abuse of discretion standard.  (*Ibid.*)  We find no abuse of discretion.

The California Supreme Court has circumscribed the grounds on which an order may be entered nunc pro tunc.  "A court can always correct a clerical, as distinguished from a judicial error which appears on the face of a decree by a *nunc pro tunc* order.  [Citations.]  It cannot, however, change an order which has become final even though made in error, if in fact the order made was that intended to be made. . . .  'The function of a *nunc pro tunc* order is merely to correct the record of the judgment and

_____

[5]  The second *pro hac vice* application did not request an order nunc pro tunc.  Neither motion for attorney fees requested nunc pro tunc admission *pro hac vice*.

not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made. The question presented to the court on a hearing of a motion for a *nunc pro tunc* order is: What order was in fact made at the time by the trial judge?'" (*Estate of Eckstrom* (1960) 54 Cal.2d 540, 544.) "It is only when the form of the judgment fails to coincide with the substance thereof, as intended at the time of the rendition of the judgment, that it can be reached by a corrective *nunc pro tunc* order." (*Id.* at p. 545; see *Estate of Careaga* (1964) 61 Cal.2d 471, 475 [court may correct an order nunc pro tunc if "[s]uch a correction does not change the meaning or legal effect of the decree"]; *Mather v. Mather* (1943) 22 Cal.2d 713, 719 [purpose of nunc pro tunc order is to correct and to express the true intention of the court as of the earlier date "and thus conform to verity"].)[6]

Here, there were no grounds for entry nunc pro tunc of an order granting *pro hac vice* admission to Joseph Siprut. The first *pro hac vice* application was not approved for failure to comply with rule 9.40 of the California Rules of Court. Plaintiff does not dispute—and concedes—the application did not comply with rule 9.40. There was no mistake and no clerical error. Rejection of the first *pro hac vice* application became final.

The second *pro hac vice* application was filed 16 months after the first application was filed and, apparently, 14 months after it was not approved. The second application did not request admission nunc pro tunc. The trial court denied the second *pro hac vice* application because Joseph Siprut had appeared 12 times in California state

---

[6] "'The power of the court [to enter a judgment nunc pro tunc] is to make the journal entry speak the truth by correcting clerical errors and omissions, and it does not extend beyond such function. Although grounds may exist for opening, modifying, or vacating *the* judgment itself, in the absence of such grounds, the court may not, under the guise of an amendment of its records, revise or change the judgment in substance and have such amended judgment entered nunc pro tunc. . . .'" (*Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 891, italics added.)

courts within the prior 11 months. The order expressed the trial court's true intention and its form coincided with its substance. That order too became final, and there was no mistake or clerical error. When, a year later, Plaintiff first requested *pro hac vice* admission for Joseph Siprut nunc pro tunc, the trial court had twice rejected his applications for *pro hac vice* admission, and the record correctly expressed the trial court's intentions.

Thus, a nunc pro tunc order was unnecessary to correct a clerical error or mistake, to make the form of the order coincide with its substance, or to express the trial court's true intention. Indeed, the trial court had no authority to enter a nunc pro tunc order because such an order would have altered the substance of the two prior actions rejecting *pro hac vice* admission to Joseph Siprut. (*Estate of Eckstrom*, *supra*, 54 Cal.2d at p. 544 ["'The function of a *nunc pro tunc* order is merely to correct the record of the judgment and not to alter the judgment actually rendered . . . .'"].)

In the trial court, Plaintiff relied on *Arroyo Software*, *supra*, 69 Cal.App.4th at page 624, in which the Court of Appeal held the trial court did not abuse its discretion by entering nunc pro tunc orders granting motions for admission *pro hac vice*. The trial court distinguished *Arroyo Software* on the ground it "does not appear to have involved an out-of-state lawyer whose pro hac vice motions had been denied by the court, only those in which they were belatedly made." We agree. In *Arroyo Software*, there is no mention of prior motions for *pro hac vice* admission having been denied.

On appeal, Plaintiff relies on *In re Sheehan Memorial Hospital* (Bankr. W.D.N.Y. 2007) 380 B.R. 299 (*Sheehan*), in which the bankruptcy court granted admission *pro hac vice* on a nunc pro tunc basis in order to consider an application for attorney fees. In *Sheehan*, the unsecured creditors' committee was represented by a law firm of which only one attorney had been admitted to practice in the bankruptcy court. (*Id.* at p. 303.) That attorney ended his relationship with the law firm, but no other attorney from the firm sought admission *pro hac vice*. (*Id.* at p. 304.) For a significant

16

period of its representation, the law firm filed papers and appeared in the bankruptcy court with proper qualification. (*Ibid.*) The law firm sought to recover attorney fees for the period of time for which no attorney from the firm had applied for admission *pro hac vice*. (*Ibid.*) The failure to file a *pro hac vice* application was due to an oversight. (*Ibid.*) The bankruptcy court, finding the oversight to have been "innocent" and "without any intent to deceive the court," treated counsel's fee application as a request for nunc pro tunc admission *pro hac vice*. (*Ibid.*) The court granted the request and proceeded to consider the merits of the fee application. (*Ibid.*)

    *Sheehan* is inapposite because the bankruptcy court had not previously denied a request for admission *pro hac vice*. By entering a nunc pro tunc order granting admission *pro hac vice*, the bankruptcy court was not changing an order which had become final. And, of course, federal case authority does not bind us on matters of state law. (*People v. Avena* (1996) 13 Cal.4th 394, 431; *Donley v. Davi* (2009) 180 Cal.App.4th 447, 461; *Howard Contracting, Inc. v. G. A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 52.)

    D. *Plaintiff's Representation by California Counsel Did Not*
     *Make Out-of-state Counsel's Work Compensable.*

    Plaintiff argues that at all times she and the putative class were represented by a licensed California attorney in that Reis signed the complaints and his name appeared on all court-filed documents. Having a licensed California attorney on the pleadings meant that Plaintiff and the putative class were properly represented by qualified counsel at all relevant times. Compensation for attorney services is, however, a different matter. Reis was not a partner, employee, or member of Siprut PC. The work by Joseph Siprut and Vold for which recovery was sought was conducted before Atkins, a Siprut PC attorney licensed to practice in California, had been associated as counsel.

    Plaintiff argues that "in modern practice, where many law firms have offices, lawyers and clients across the country, it is common for a case to be filed in a

17

particular jurisdiction where the lead lawyer may not be admitted." According to Plaintiff, so long as a matter has a "lead lawyer" licensed to practice in California, out-of-state attorneys "sitting at their desks in Chicago, New York, Florida, or wherever," may bill time and be compensated on the case without having to be admitted *pro hac vice*. In some situations that might be correct. Under *Birbrower*, *supra*, 17 Cal.4th at page 129, performance of legal services outside of California for a California client does not automatically constitute the practice of law in California. But in this case, the "lead attorney" was Joseph Siprut, who was not admitted to practice in California, and, as we have explained, Joseph Siprut and Vold did "practice law in California" (§ 6125), as that term was defined in *Birbrower*, and, therefore, they violated section 6125.

Plaintiff cites *Winterrowd v. American General Annuity Ins. Co.* (9th Cir. 2009) 556 F.3d 815, 824 (*Winterrowd*), as supporting the proposition that work by out-of-state attorneys is compensable so long as it is "filtered through a licensed in-state attorney, who is admitted to the local court and subject to its discipline." In *Winterrowd*, the Ninth Circuit Court of Appeals considered whether the plaintiffs could recover, under Labor Code section 218.5, attorney fees generated by a member of the Oregon State Bar (William Wheatley, Sr.), who assisted a member of the California State Bar in litigating a case before the United States District Court for the Central District of California. (*Winterrowd*, *supra*, at p. 817.) Based on *Birbrower*, the district court had determined the fees generated by Wheatley, Sr., could not be recovered because he had not been admitted to practice law in the State of California and the Central District of California. (*Winterrowd*, *supra*, at p. 820.)

The Ninth Circuit, reversing, held the district court erred by relying on *Birbrower* because California state court rules do not govern practice in the federal court. (*Winterrowd*, *supra*, 556 F.3d at p. 820.) The Ninth Circuit nonetheless analyzed *Birbrower* and concluded it was distinguishable: "The activities of the Birbrower firm constituted the practice of law in California because it entered into a retainer agreement

18

with a client in California to provide legal services there and its attorneys came to California for that purpose. By contrast, Wheatley, Sr. did not enter into a retainer agreement with the Winterrowd plaintiffs. Instead, the member of the California State Bar whom they retained entered into an agreement with Wheatley, Sr. to provide him with assistance in prosecuting an action against the defendants . . . . Thus, the case turned more on that issue than any issue regarding California law." (*Winterrowd*, *supra*, at pp. 821-822.)

The Ninth Circuit also found that the arrangement between Wheatley, Sr., and the California attorney who retained him was "closely analogous to a partnership" and was "for all practical purposes a partnership for the purpose of prosecuting the case." (*Winterrowd*, *supra*, 556 F.3d at p. 822.) The Ninth Circuit interpreted *Birbrower* as permitting recovery of attorney fees generated by an out-of-state attorney if at least one member of the out-of-state attorney's law firm was admitted in California. (*Winterrowd*, *supra*, at p. 822.) Since at least one member of the de facto law partnership was admitted to practice in California, the Ninth Circuit concluded that Wheatley, Sr., would be entitled to be compensated under California Labor Code section 218.5. (*Winterrowd*, *supra*, at p. 822.)

The Ninth Circuit's discussion of *Birbrower* and conclusion that Wheatley, Sr.'s attorney fees were recoverable under California law are dicta because, as the Ninth Circuit recognized, admission to practice in the Central District of California is governed by the local rules of the Central District of California and federal case law. (*Winterrowd*, *supra*, 556 F.3d at p. 822.) In addition, as we have noted, federal decisional authority does not bind us on matters of state law. (*People v. Avena*, *supra*, 13 Cal.4th at p. 431.)

*Winterrowd* is distinguishable in two significant ways. First, in *Winterrowd*, the California attorney retained Wheatley, Sr., to assist in the litigation. In contrast, in this case, the out-of-state law firm, Siprut PC, retained the California attorney (Reis) and his law firm as Siprut PC's local California counsel because Siprut PC did not

have a California office.  Joseph Siprut, not Reis, was retained by Plaintiff to prosecute the case.  Siprut PC acted as lead counsel.  Joseph Siprut and Vold did not merely perform "back-office functions" or serve as consultants, but performed most of the legal work in the case, including appearances at court and telephonic conferences.  Reis's sole function apparently was to act as local counsel under whose name and state bar number pleadings could be signed and filed until Joseph Siprut was admitted *pro hac vice*.

Second, nothing in the declarations submitted by Reis and Joseph Siprut suggests their relationship was "closely analogous to a partnership" (*Winterrowd*, *supra*, 556 F.3d at p. 822).  Reis was a salaried employee of The Reis Law Firm A.P.C., and Joseph Siprut had his own law firm, Siprut PC.  The two law firms had a fee agreement by which they agreed to allocate attorney fees pursuant to each firm's lodestar time.

## II.

### The Trial Court Did Not Err by Awarding a Total of $11,000 in Attorney Fees and Costs.

The services rendered in this case by the two attorneys admitted to practice in California—Reis and Atkins—were compensable.  The lodestar figure for their work was $36,290.50.  That figure was based on 44.8 hours billed by Reis at $460 per hour and 36.9 hours billed by Atkins at $425 per hour.  The trial court awarded $11,000 in attorney fees and costs based on the work performed by Reis and Atkins.

The amount of fees to be awarded is within the trial court's discretion, and "'[t]he value of legal services performed in a case is a matter in which the trial court has its own expertise.'" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096.)  "The "'experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong."'" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.)  The trial court has "wide discretion"

20

in reducing the fees sought based on the court's estimate of time spent on noncompensable activities.  (*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 64.) Abuse of discretion standard applies to the trial court's determination of the lodestar figure and application of any multiplier.  (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1250.)  "Fees approved by the trial court are presumed to be reasonable, and the objectors must show error in the award."  (*Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 556.)

We find no abuse of discretion.  The trial court found the rate of $300 per hour was appropriate and 33 hours was the reasonable amount of time.  Of the 81.7 hours billed by Reis and Atkins, the court found:  "[A]lmost one-half of that time was spent 'corresponding with Co-Counsel.'  These attorneys did not communicate with the named plaintiff or defense counsel.  They did not draft or edit any documents filed in this case, but they did review the documents prepared by co-counsel.  They did make personal appearances at several court hearings.  They claim hours of work to research and review motions prepared by co-counsel and also to prepare for the hearings.  Much of this time seems duplicative."  The court considered the fact only two of the 232,000 class members had submitted claims and found that a multiplier was not justified because "[g]iven the extremely poor class response," the settlement did not produce a "true benefit to the class."  In addition, the court found that "[m]ore appearances were made than were necessary because paperwork was not complete on the first attempt."

Plaintiff does not challenge any of the trial court's findings or argue they were not supported by substantial evidence.  Instead, she argues, "[t]he rates and hours were not challenged by anyone, and were not even the subject of discussion" until the trial court made its order awarding $11,000 in attorney fees and costs.  Because the parties agreed on the amount of fees, Plaintiff asserts (without citing California law) that "the law does [not] contemplate the trial court auditing or criticizing specific billable tasks."  Wrong.  Under California law, "[t]he court has a duty, independent of any

21

objection, to assure that the amount and mode of payment of attorney fees are fair and proper, and may not simply act as a rubberstamp for the parties' agreement." (*Consumer Privacy Cases*, *supra*, 175 Cal.App.4th at p. 555.) Federal law is in accord: "'The evil feared in some settlements—unscrupulous attorneys negotiating large attorney's fees at the expense of an inadequate settlement for the client—can best be met by a careful . . . judge, sensitive to the problem, properly evaluating the adequacy of the settlement for the class and determining and setting a reasonable attorney's fee . . . .'" (*Zucker v. Occidental Petroleum Corp.* (9th Cir. 1999) 192 F.3d 1323, 1328, fn. 20.)

The trial court in this case properly exercised its responsibility to independently determine whether the number of hours billed by Reis and Atkins and their respective billing rates were reasonable under the circumstances. We agree with the trial court in finding a multiplier was unjustified. The trial court's decision to award $11,000 in attorney fees and costs to Plaintiff was not wrong, much less ""clearly wrong."'" (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1132.)

## III.

### The Trial Court Did Not Err by Reducing the Plaintiff Incentive Award to $500.

Plaintiff argues the trial court erred by reducing her negotiated incentive fee from $3,500 to $500. We conclude otherwise.

Incentive awards to class representatives are intended to compensate class representatives for the work and risk undertaken on behalf of the class, to reimburse expenses incurred in the class litigation, and sometimes to recognize the willingness of class representatives to act as a private attorney general. (*Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380, 1393-1394.) An incentive award may be appropriate to induce someone to serve as a class representative. In determining whether to make an incentive award, the court may consider (1) the risk, both financial and

22

otherwise, the class representative faced in bringing the suit; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit received by the class representative as a result of the litigation. (*Id*. at pp. 1394-1395.)

Incentive awards to class representatives are discretionary, and there is no presumption of fairness in reviewing them. (*Cellphone Termination Fee Cases*, *supra*, 186 Cal.App.4th at pp. 1393, 1395.)

The trial court considered the appropriate factors and found: "Leslie Golba seeks an enhancement of $3500.00[.] Her declaration does not address what happened during any purchase at one of defendant's stores. It appears fairly boilerplate. She estimated she spent 16 hours working with Mr. Siprut on this matter (Mr. Siprut represents her as the class representative in at least two other California actions). The total 'payout' from this settlement, in the form of the two coupons issued to [the] class, was a minimum of $10.00 and a maximum of $30.00. The court awards Ms. Golba a plaintiff's enhancement of $500.00."

Substantial evidence supported those findings. The declaration submitted by Plaintiff in support of the motion for attorney fees does not reveal that she undertook any particular risk, had any unreimbursed expenses, or encountered any unusual difficulties in serving as class representative. Plaintiff did not testify at a trial and her declaration does not state whether she was deposed or prepared answers to written discovery. Over a period of about 24 months, Plaintiff spent about 16 hours—or 40 minutes a month—assisting with the case. The trial court did not err by reducing the amount of the incentive award.

## DISPOSITION

The order on the motion for attorney fees is affirmed.  Inasmuch as respondent did not appear on appeal, no costs are awarded.


FYBEL, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LESLIE GOLBA et al.,<br><br>   Plaintiffs and Appellants,<br><br>      v.<br><br>DICK'S SPORTING GOODS, INC.,<br><br>   Defendant and Respondent. | G049611<br><br>(Super. Ct. No. 30-2011-00472227)<br><br>ORDER GRANTING REQUEST<br>FOR PUBLICATION |

Attorney Gerald G. Knapton of Ropers, Majeski, Kohn & Bentley has requested that our opinion, filed on July 14, 2015, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2), (3), (4), and (6). The request is GRANTED. The opinion is ordered published in the Official Reports.

FYBEL, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

25