Filed 6/13/25  The Whiting-Turner Contracting Co. v. 250 Fourth Development CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE WHITING-TURNER CONTRACTING COMPANY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>250 FOURTH DEVELOPMENT LP et al.,<br><br>        Defendants and Appellants. | A169470<br><br><br>(City & County of San Francisco Super. Ct. No. CGC-17-559979) |

In this construction contract dispute, 250 Fourth Development LP, Ganendra "Jay" Singh, GMS Development, Inc., Paradigm Hotels Group, LLC, and Mint Development, LP (collectively, 250 Fourth) challenge the trial court's orders awarding attorney fees and costs to general contractor The Whiting-Turner Contracting Company (Whiting-Turner) following a judgment in Whiting-Turner's favor.  250 Fourth argues (1) attorney fees were not properly awarded on a contractual basis pursuant to Civil Code section 1717;[1] (2) the referee erroneously included fees for time an attorney licensed out-of-state billed before being admitted *pro hac vice*; and (3) expert witness fees were improperly awarded as costs.  We

---

[1] Undesignated statutory references are to the Civil Code.

1

reverse the trial court's costs award to the extent it includes expert witness fees. In all other respects, we affirm the orders.

## BACKGROUND

### A.

250 Fourth contracted with Whiting-Turner to construct a hotel in San Francisco. The contract primarily consists of two parts: (1) a modified "AIA Document A102-2007 Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price"; and (2) a modified "AIA Document A201-2007 General Conditions of the Contract for Construction" (General Conditions).

In a prior decision (*The Whiting-Turner Contracting Company v. 250 Fourth Development LP et al.* (Apr. 21, 2025, A168492) [nonpub. opn.]), we affirmed the trial court's judgment on the merits of the underlying breach of contract litigation. The factual background of the litigation is set forth in that opinion.

After the trial court's entry of judgment in Whiting-Turner's favor, Whiting-Turner filed a motion for attorney fees and costs. Following briefing and oral argument, the court awarded Whiting-Turner, among other costs not at issue in this appeal, $4,716,845.21 in attorney fees, citing section 1717, and $619,516 in expert witness costs. With respect to attorney fees, the referee concluded both (1) that sections 14.2.4 and/or 14.2.5 of the General Conditions were unilateral provisions allowing recovery of attorney fees incurred in an action to enforce the contract; and (2) that 250 Fourth was estopped from arguing otherwise.

2

## DISCUSSION

### A.

250 Fourth contends that the referee erred in awarding attorney fees to Whiting-Turner, under section 1717, because neither provision in the General Conditions supports a fee award in this situation.  We disagree.

### 1.

Unless authorized by either statute or agreement, attorney's fees ordinarily are not recoverable as costs and each party must pay their own fees.  (Code Civ. Proc., §§ 1021, 1033.5, subds. (a)(10)(A)-(C); *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 127; *Hart v. Clear Recon Corp.* (2018) 27 Cal.App.5th 322, 326.)  "Where a contract accords a right to attorney fees to one party but not the other, . . . section 1717 creates a statutory reciprocal right to attorney fees in all parties to the contract." (*Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 968 (*Myers*).)

Section 1717 provides (in relevant part):  "In any action on a contract, *where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract*, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."  (§ 1717, subd. (a), italics added.)

" 'Before section 1717 comes into play, it is necessary to determine whether the parties entered an agreement for the payment of attorney fees and, if so, the scope of the attorney fee agreement.' "  (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752.)  "Generally, an order granting . . . an award of attorney fees is reviewed under the abuse of discretion standard of review.  [Citation.]  However, the

3

determination of whether the criteria for an award of attorney fees and costs have been met is a question of law for our de novo review. [Citations.] As for any disputed factual issues, the trial court's findings are reviewed under the substantial evidence rule and must be affirmed if supported by substantial evidence." (*Soni v. Wellmike Enterprise Co. Ltd.* (2014) 224 Cal.App.4th 1477, 1481.)

In a portion of the General Conditions titled "Termination by the Owner for Cause," section 14.2.4 of the General Conditions provides: "If Owner terminates the Contract as provided herein on account of Contractor's default, and Owner then elects to complete the Work, Contractor shall not be entitled to receive any further payments under the Contract . . . . *Upon completion of the Work, if the expense reasonably incurred by Owner in completing the Work* (including, without limitation, payments made by Owner to any party supplying labor, materials, equipment, services and the like for the Work, and all costs incurred by Owner for managerial, administrative or supervisory services), plus amounts previously paid by Owner to Contractor, exceed the Contract Sum, Contractor shall pay Owner, upon demand, the amounts of such excess, plus interest thereon. *In all other cases of termination for Contractor's default, Owner's liability to Contractor shall be limited to reimbursement to Contractor of that portion of the unpaid Compensation to Contractor which is earned*, due and payable to Contractor as of the date of the termination, *less the sum of* (1) any amounts owing to Owner by Contractor under the terms of the Contract Documents, and (2) *all direct costs, expenses, attorneys' fees, experts' fees, and court costs incurred* by Owner *as a consequence of Contractor's default*." (Italics added.)

Section 14.2.5 follows and provides: "Upon the occurrence of an Event of Default, Owner shall have the right to pursue *any and all remedies* available at law or in equity including, *without*

*limitation*, the following: (1) the right to keep the Contract in effect and *sue Contractor for all damages caused by the default* and recover the cost thereof in connection with any delay in the completion of any portion of the Work, or otherwise caused by or resulting from any such default on the part of Contractor; (2) the right to cure any such default by Contractor and to recover any direct costs and liquidated damages only caused thereby, and (3) the right to terminate the Contract by giving Contractor written notice that the Contract is terminated.  Upon such termination, Owner shall have the right to complete the Work, or to contract with others for completion of the Work, and, in either event, to charge the cost of completion to Contractor.  If the cost of completion exceeds the amount that would have been payable under the Contract, Contractor shall immediately pay the amount of such excess to Owner.  *Owner may recover from Contractor all damages, direct costs, expense, attorneys' fees, experts' fees, court costs and lost profits of any kind and nature, directly or indirectly related to the default*, including without limitation any and all third-party damages, unless waived elsewhere in this Agreement.  Contractor shall indemnify, defend and protect and hold Owner harmless against any liability, claim, damage, loss, cost (including reasonable attorneys' fees) or penalty which may be threatened or may in fact arise during the period of any curable failure of Contractor to perform its contractual duties hereunder."  (Italics added.)

## 2.

The parties disagree about whether the contractual provisions outlined above qualify as unilateral attorney fee provisions, within the meaning of section 1717.  After independently reviewing the contract, we agree with Whiting-Turner that section 14.2.5 is such a unilateral attorney fee provision and that section 1717, subdivision (a), makes it reciprocal.

"[T]here is no magic formulation for a fees provision." (*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1183.) But section 1717, subdivision (a), applies "only to contractual provisions providing for an award of attorney fees incurred to enforce the contract." (*Myers, supra,* 13 Cal.App.4th at p. 971.)

True, section 14.2.5 indicates, in its final sentence, that the parties intended that Whiting-Turner would pay 250 Fourth's attorney fees if a third-party claim arose "during the period of any curable failure of [Whiting-Turner] to perform its contractual duties." And the mere inclusion of attorney fees in third-party indemnity provisions—which allow one party to recover costs incurred defending third-party claims—generally does not mean the provision is made reciprocal under section 1717, subdivision (a). (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 600-602 (*Alki*); *Carr Business Enterprises, Inc. v. City of Chowchilla* (2008) 166 Cal.App.4th 14, 20.)

But section 14.2.5 does not focus exclusively on third-party claims. Nor does it narrowly entitle 250 Fourth only to fees incurred as " 'costs to complete the work.' " It explicitly provides that, on the occurrence of an "Event of Default," 250 Fourth "shall have the right to pursue *any and all remedies* available at law" including but not limited to "the right to keep the Contract in effect and *sue Contractor for all damages* caused by the default" and "the right to terminate the Contract by giving Contractor written notice that the Contract is terminated." (Italics added.) 250 Fourth (unsuccessfully) pursued such contract enforcement remedies in the underlying litigation.

Most importantly, after mentioning litigation between the parties, section 14.2.5 continues and provides: *"Owner may recover from Contractor all damages*, direct costs, expense, *attorneys' fees, experts' fees*, court costs and lost profits of any kind and nature, *directly or indirectly related to the default,*

6

including *without limitation* any and all third party damages."
(Italics added.) This language is remarkably broad. It is plainly
not limited to third-party claims, it contemplates actions between
the parties, and it does not mention "indemnity." Accordingly, we
agree with the referee (and Whiting-Turner) that section 14.2.5
provides for attorney fees incurred in an action between the
parties to enforce the contract. (See *Alki, supra*, 4 Cal.App.5th at
p. 606 [§ 1717, subd. (a), applies only when a contract provision
" 'specifically' refer[s] either to actions to enforce the contract or
to the prevailing party"]; *id.* at p. 600 [in distinguishing
indemnification provisions from contractual attorney fees
provision, "key indicator is an express reference to
indemnification"]; *Continental Heller Corp. v. Amtech Mechanical
Services, Inc.* (1997) 53 Cal.App.4th 500, 508 [key consideration is
whether contract "expressly provides for attorney fees incurred as
the result of any breach of the contract"]; cf. *Zalkind v. Ceradyne,
Inc.* (2011) 194 Cal.App.4th 1010, 1027-1028 [construing
language extending indemnity provision to cover attorney fees
incurred " 'whether or not they have arisen' " from third-party
claims as applying to direct actions between parties].)

Because section 14.2.5 "specifically" provides that 250
Fourth may recover "attorneys' fees" it incurs to enforce the
contract, this provision creates, under section 1717, subdivision
(a), a reciprocal right to attorney fees for the prevailing party.
(*Myers, supra,* 13 Cal.App.4th at pp. 963, 971.) The referee did
not err in concluding there was a contractual basis for Whiting-
Turner's attorney fee award. Accordingly, we need not address
section 14.2.4 or the referee's (alternative) estoppel analysis.

### B.

250 Fourth also maintains that the referee erred by
awarding Whiting-Turner fees (at a paralegal rate) for the work
done by an associate attorney licensed out-of-state before he was
admitted *pro hac vice* (Cal. Rules of Court, rule 9.40) in

7

California.[2]  We conclude that 250 Fourth fails to meet its burden to show error on appeal.

## 1.

"A fundamental principle of California law . . . is that no person may 'practice law in California' unless that person is an active member of the State Bar.  (Bus. & Prof. Code, § 6125 . . . .)" (*Golba v. Dick's Sporting Goods, Inc.* (2015) 238 Cal.App.4th 1251, 1255.)  It follows that no one may recover compensation for practicing law in California unless they were a member of the State Bar or admitted *pro hac vice at the time the services were performed*, or the legal services fall within an exception.  (*Ibid.*; *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 127, 130, 135-137 (*Birbrower*), superseded by statute on other grounds.)

Exceptions have since been added by our Supreme Court that allow attorneys licensed out-of-state to practice in California as registered in-house counsel (rule 9.46), in arbitration proceedings (rule 9.43), and on short-term litigation projects. (Rule 9.47.)

"Nonmembers of the California State Bar may recover fees for services that nonattorneys may legally perform.  (*Schroeder v. Wheeler* (1932) 126 Cal. App.[] 367, 378.)"  (*Estate of Condon* (1998) 65 Cal.App.4th 1138, 1142, fn. 4.)  To " 'practice law' " in California means appearing in court, providing legal advice, and preparing legal instruments and contracts.  (*Birbrower, supra,* 17 Cal.4th at p. 128; *Estate of Condon,* at pp. 1142-1143.)

It is undisputed that the associate attorney in question was licensed in Texas but not in California.  He began working on the case in November 2021 but did not obtain *pro hac vice* status until January 20, 2022.  The referee found the associate's work

---

[2] All further references to "rules" are to the California Rules of Court.

was supervised by an active licensed attorney, acknowledged that rule 9.47(c)(4) might apply in these circumstances, but declined to address whether the associate timely sought *pro hac vice* admission. Instead, the referee awarded Whiting-Turner fees for the associate's disputed time at a lower paralegal rate, after finding that his work was equivalent to paralegal work and thereby could not amount to unauthorized practice of law.

As an appellate court, we must presume the trial court's order is correct. The appellant bears the burden of affirmatively demonstrating error. (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443.) To do so, the appellant must provide an adequate record (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348) along with reasoned and intelligible legal argument supported by references to the record and pertinent authority. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 276-277; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; rule 8.204(a)(1)(B)-(C).)

**2.**

In granting the limited fee award for the associate's disputed hours, the referee first cited rule 9.47(c)(4). Rule 9.47(c)(4) states that "[a]n attorney [licensed out-of-state and] meeting the requirements of this rule, who complies with all applicable rules, regulations, and statutes, is not engaging in the unauthorized practice of law in California if the attorney's services are part of: [¶] . . .[¶] . . . [a] formal legal proceeding that is anticipated or pending and in which the *attorney's supervisor* is authorized to appear or reasonably expects to be authorized to appear." (Italics added.) Whiting-Turner argues the referee's award was proper because any practice of law that the associate engaged in, in California before January 2022, was not unauthorized pursuant to rule 9.47(c)(4).

It appears that Whiting-Turner's position has merit because the associate, in November and December of 2021, was

supervised by at least one licensed member of the California bar. Yet 250 Fourth's argument in its opening brief ignored rule 9.47(c)(4) and focused solely on challenging the trial court's finding that the associate's work in the disputed period did not constitute the practice of law.  In pressing that single argument, 250 Fourth also failed to cite the record (other than the referee's ruling).  Thus, 250 Fourth forfeited its appellate argument by failing, in its opening brief, to address rule 9.47(c)(4) and by failing to cite any part of the record demonstrating either that rule 9.47's requirements were unmet *or* that the associate made court appearances, provided legal advice, or prepared any legal instrument.  (See *Birbrower, supra,* 17 Cal.4th at p. 128*; Hernandez v. First Student, Inc., supra,* 37 Cal.App.5th at pp. 276-277; rule 8.204(a)(1)(B)-(C).)

We cannot assume the trial court's order was erroneous (*Howard v. Thrifty Drug & Discount Stores, supra,* 10 Cal.4th at p. 443) and it is not our role to construct an appellant's argument. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

## C.

250 Fourth also maintains that the referee erred by awarding (as costs) fees for expert witnesses not ordered by the court.  We agree.

### 1.

"The 'costs' of a civil action consist of the expenses of litigation, usually excluding attorney fees.  Under the common law rule, parties to litigation must bear their own costs.  The right to recover any of such costs is determined entirely by statute.  'It is axiomatic that the right to recover costs is purely statutory, and, in the absence of an authorizing statute, no costs can be recovered by either party.' "  (*Davis v. KGO-T.V., Inc.* (1998) 17 Cal.4th 436, 439, superseded by statute on other

grounds.)  Code of Civil Procedure section 1032, subdivision (b), provides a prevailing party is entitled to recover costs in any action or proceeding, "[e]xcept as otherwise expressly provided by statute."

Fees of experts not ordered by the court are not recoverable as costs to a prevailing party, "except when expressly authorized by law."  (Code Civ. Proc., § 1033.5, subds. (a)(8), (b)(1); accord, *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1149.)

Over 250 Fourth's objection, the referee determined Whiting-Turner was entitled to expert witness fees under section 14.2.5 of the General Conditions.

**2.**

Even if expert witness fees are recoverable under the contract, 250 Fourth insists that the referee lacked the authority to award them to Whiting-Turner because it did not plead and prove its expert fees as an element of damages at trial.  250 Fourth contends this is the only way to obtain an award of contractual costs not authorized by Code of Civil Procedure section 1033.5, subdivision (a).

Most published opinions support 250 Fourth's position. (See, e.g., *Hsu v. Semiconductor Systems, Inc.* (2005) 126 Cal.App.4th 1330, 1341-1342; *Carwash of America-PO v. Windswept Ventures No. I* (2002) 97 Cal.App.4th 540, 544; *Robert L. Cloud & Associates, Inc. v. Mikesell* (1999) 69 Cal.App.4th 1141, 1153-1154.)  Whiting-Turner disagrees and claims pleading and proof was unnecessary.  The referee agreed, relying on *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC* (2010) 185 Cal.App.4th 1050 (*Thrifty*).

*Thrifty* considered whether expert witness fees could be recovered via post judgment costs memorandum, rather than pleading and proof at trial, when supported by an express

11

provision of the contract awarding expert fees to " 'the prevailing party.' " (*Thrifty, supra*, 185 Cal.App.4th at pp. 1056, 1059-1060, 1065-1066.) The court answered that question affirmatively and explained: "While the Legislature has not adopted a specific provision addressing the recovery of expert witness fees, such fees are, indeed, a cost, and when 'expressly authorized by law,' they are 'allowable as costs' under Code of Civil Procedure section 1033.5, subdivision (b)(1). We therefore see no reason why they should not be recoverable as costs when the parties specifically agree to such a provision in a freely negotiated contract." (*Thrifty*, at p. 1066.)

Here, we need not decide whether *Thrifty* was correctly decided because the contract provision before us is distinguishable. In contrast to the expressly *mutual* expert fees provision the *Thrifty* court considered (*Thrifty, supra*, 185 Cal.App.4th at p. 1056), here both sections 14.2.4 and 14.2.5 unilaterally benefit *only 250 Fourth*.

Although Civil Code section 1717, subdivision (a), makes mutual section 14.2.5's unilateral provision for attorney fees, it does not have a similar effect for the fees of an expert witness not ordered by the court. (See *Fairchild v. Park* (2001) 90 Cal.App.4th 919, 929 [rejecting argument that "scope of the term 'costs' as used in Civil Code section 1717 can be enlarged by contract beyond the costs allowable under Code of Civil Procedure section 1033.5"]; but see *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 492.) *Fairchild* is persuasive.

The trial court erred in awarding Whiting-Turner its expert fees.

## DISPOSITION

The post judgment "final order re motion to strike or tax costs" is modified by deleting the expert fees award of $619,516. In all other respects, the court's post judgment orders awarding attorney fees and costs are affirmed. Whiting-Turner is entitled to its costs on appeal. (Rule 8.278(a)(1), (3).)

BURNS, J.

WE CONCUR:

SIMONS, ACTING P.J.
CHOU, J.

*The Whiting-Turner Contracting Company v. 250 Fourth Development LP et al.*
*(A169470)*