Filed 8/11/23  Nachtrieb v. County of Orange CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CASEY NACHTRIEB, | |
| Plaintiff and Appellant, | G060294 |
| v. | (Super. Ct. No. 30-2011-00467326) |
| COUNTY OF ORANGE et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeals from a postjudgment order of the Superior Court of Orange County, Craig L. Griffin, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Woodruff, Spradlin & Smart, Daniel K. Spradlin, Jeanne L. Tollison and Brian A. Moore for Defendants and Appellants.

The Lanier Law Firm, Michael Akselrud and Rebecca Phillips; Messing & Spector, Noah A. Messing and Phillip M. Spector for Plaintiff and Appellant.

This appeal and cross-appeal challenge the trial court's award of attorney fees based on the federal Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988). We conclude one ground for partial reversal has been shown. We will remand on that ground and otherwise affirm the award.

FACTS

This is the third appeal of this case and here we only discuss facts material to our review of the trial court's 2021 attorney fee award to Casey Nachtrieb. In 2011, Nachtrieb filed a lawsuit against the County of Orange and its Social Services Agency employees Minda Herman and Birgitt Walpus (collectively appellants), as well as other agency employees and the County of San Bernardino, contending they acted under color of law and caused Nachtrieb to lose custody of her daughter who was sexually abused by the biological father.

In 2014, a motion for summary judgment (the MSJ) was granted against Nachtrieb that we reversed. (*Nachtrieb v. County of Orange* (June 30, 2017, G050930) [nonpub. opn.].) While the appeal was pending, Nachtrieb settled with the County of San Bernardino and other individuals. Five months later, we admitted out-of-state attorney Noah A. Messing (a member of the New York State Bar), to represent Nachtrieb *pro hac vice* in her appeal. After we reversed the MSJ grant, jurisdiction of the matter was returned to the trial court in September 2017.

Seven months later, in April 2018, Messing successfully filed in the trial court an application for *pro hac vice* admission. Twelve months after that, two other out-of-state attorneys, Monica Cooper and Rebecca L. Phillips (members of the Texas State Bar), were also admitted *pro hac vice* to represent Nachtrieb. In all, Nachtrieb was represented by more than five different law firms, over the course of a decade between the lawsuit filing and the court's award of attorney fees. All firms provided services on a contingency basis from what we can discern from the record.

2

A bifurcated five-week jury trial was conducted in 2020, and the jury found two individual defendants not liable, but the remaining defendants (i.e., appellants) liable pursuant to title 42 United States Code section 1983 [deprivation of civil right] (all further undesignated statutory references are to this title). The trial court entered a judgment for Nachtrieb based on the jury's damages findings totaling $ 1,278,800.[1] We affirmed the judgment (*Casey N. v. County of Orange* (2022) 86 Cal.App.5th 1158), which decreed "the prevailing party" was Nachtrieb.[2] She then filed her motion for attorney and paralegal fees (the fees motion) underlying this appeal.

In the fees motion, Nachtrieb argued that although a minimum of $4.5 million should be awarded, the trial court should exercise its discretion to enhance the award to $9.9 million because of factors such as the complexity of the litigation. The attorneys who had represented Nachtrieb filed declarations about their work in the matter. Also presented were three supporting declarations of attorneys who had no direct involvement in the matter.

Appellants filed opposing papers to argue for an attorney fee award of $2.2 million. Their filings included an expert's declaration presenting supporting opinions. Among other challenges, appellants argued almost 500 hours spent by the out-of-state attorneys (Messing, Cooper, and Phillips) should be excluded from any award because

---

[1] The judgment specified that "against Defendants County of Orange, Minda Herman and Birgitt Walpus on [Nachtrieb's] causes of action brought under . . . section 1983, [Nachtrieb] shall recover from said Defendants the following amounts: From Defendant County of Orange the sum of $749,040.00, from Defendant Minda Herman the sum of $321,600.00, and from Defendant Birgitt Walpus the sum of $192,960.00." The jury's damages findings included punitive damages of $5,700 against Walpus and $9,500 against Herman.

[2] Fees for paralegal services may be included in a section 1988 fees award. (*Missouri v. Jenkins* (1989) 491 U.S. 274, 286-287.)

3

they had not yet been admitted *pro hac vice* to practice California law when those hours were billed.

After Nachtrieb filed additional documents to reply to appellants' opposition, the trial court issued a tentative ruling before conducting a March 2021 hearing. After hearing oral arguments, the court affirmed its tentative ruling award of $4,053,479 pursuant to section 1988, a fee-shifting statute for section 1983 claims (among others). The court's March 26, 2021, eight-page ruling (the ruling) summarized its overview of the litigation as follows: "The case has a lengthy history, ended in great success, reflected excellent performance by the trial counsel and appellate counsel especially, but it is also characterized by a record of an extraordinary number of instances of changes of attorneys, and the associated expansion of time, duration and inflation of hours that can accompany this." We discuss other aspects of the ruling below.

DISCUSSION

Appellants and Nachtrieb timely filed their respective appeals from the trial court's order awarding fees. Appellants assert four independent grounds for reversal and Nachtrieb asserts two others.

I. *Standard of Review and Relevant Law*

Section 1988 provides in relevant part: "In any action or proceeding to enforce a provision of [section 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a *reasonable* attorney's fee as part of the costs." (Italics added.) We are bound by the United States Supreme Court's construction of the statute (*James v. City of Boise, Idaho* (2016) 577 U.S. 306, 307) but are otherwise free to independently interpret it if there is no binding precedent (*ASARCO Inc. v. Kadish* (1989) 490 U.S. 605, 617 [state courts "possess the authority, absent a provision for exclusive federal jurisdiction, to render binding judicial decisions that rest on their own interpretations of federal law"]; see *Felder v. Casey* (1988) 487 U.S. 131, 139 (*Felder*) [concurrent state court jurisdiction over section 1983 civil rights litigation]). "We are of

4

course not bound by lower federal appellate decisions." (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 579.)

Section 1988's "legislative history explains that 'a reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys.'" (*Blum v. Stenson* (1984) 465 U.S. 886, 897 (*Blum*).) As California courts have done with state fee-shifting statutes, the United States Supreme Court has approved of the "lodestar method" for calculating reasonable fees to award under section 1988, explaining that "the 'product of reasonable hours times a reasonable rate' normally provides a 'reasonable' attorney[] fee within the meaning of" section 1988. (*Blum, supra*, at p. 897; see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1136-1137 [California Supreme Court, reviewing lodestar determination based on state attorney's fees statute, declining to follow United States Supreme Court's construction of federal fee-shifting statute for lodestar determination]; accord, *Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 88, 100 (*Kerkeles*) ["Absent some clear ground for an exception, fees in section 1983 cases should be determined under the lodestar method, which requires the court to (1) determine the number of hours reasonably expended in obtaining the result, (2) determine a reasonable hourly rate, (3) multiply the first figure by the second figure, and (4) adjust the result to reflect other pertinent factors"].)

The product of reasonable hours expended and reasonable hourly rates, i.e., the "lodestar fee," *may* be adjusted upward (sometimes called an enhancement) or downward based on recognized factors (see, e.g., *Perdue v. Kenny A.* (2010) 559 U.S. 542, 546, 548 (*Perdue*) [reviewing "fee enhancement for superior work and results"]), but "there is a strong presumption that the lodestar [fee, by itself,] is sufficient" for determining how much to award (*id.* at p. 546). The United States Supreme Court has explained the "presumption may be overcome in those rare circumstances in which the lodestar [fee] does not adequately take into account a factor that may properly be

5

considered in determining a reasonable fee," assuming the "fee applicant . . . produce[s] 'specific evidence' that supports the award. [Citation.]" (*Id.* at pp. 553-554.)

For all section 1988 attorney fee awards, a trial court must "provide a reasonably specific explanation for all aspects of a fee determination" (*Perdue, supra*, 559 U.S. at p. 558; accord, *Hensley v. Eckerhart* (1983) 461 U.S. 424, 437 (*Hensley*) ["important . . . to provide a concise but clear explanation of its reasons for the fee award"]), keeping in mind that "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection" (*Fox v. Vice* (2011) 563 U.S. 826, 838 (*Fox*)). The rule's promotion of objectivity and predictability has been discussed as follows: "Unless such an explanation is given [by the trial court], adequate appellate review is not feasible, and without such review, widely disparate awards may be made, and awards may be influenced (or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance of the case. In addition, in future cases, defendants contemplating the possibility of settlement will have no way to estimate the likelihood of having to pay a potentially huge enhancement. [Citation.]" (*Perdue, supra*, 559 U.S. at pp. 558-559.)

With the Court's guidance in mind, we agree with the parties that the abuse of discretion standard of review should be applied to the ruling. (*Fox, supra*, 563 U.S. at pp. 838-839; see *id.* at p. 838 ["appellate courts must give substantial deference" to findings on hours expended].) Trial court discretion is appropriate because of the "court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (*Hensley, supra*, 461 U.S. at p. 437.)

Our appellate review principles are well-established: "The test for abuse of discretion is whether the trial court's decision exceeded the bounds of reason. [Citation.] In applying the abuse of discretion standard, the reviewing court measures the evidence presented to the trial court against the range of options permitted by the established legal

6

criteria. [Citation.] The scope of the trial court's discretion is limited by the governing law and an action that "''transgresses the confines of the applicable principles of law'''' constitutes an abuse of discretion. [Citation.]" (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789 (*Cornerstone*); accord, *Fox, supra*, 563 U.S. at p. 839 ["A trial court has wide discretion when, but only when, it calls the game by the right rules"].) "The trial court's factual findings are reviewed under the substantial evidence standard" (*Cornerstone, supra*, 56 Cal.App.5th at p. 789; accord, *People v. Jackson* (1992) 10 Cal.App.4th 13, 22 ["there is no practical difference between the federal 'clearly erroneous' test and a substantial evidence standard of review"]) and "the trial court's legal conclusions are reviewed de novo. [Citation.]" (*Cornerstone, supra*, 56 Cal.App.5th at p. 789; accord, *Koon v. United States* (1996) 518 U.S. 81, 100 ["A district court by definition abuses its discretion when it makes an error of law"].)

Based on the above, the trial court had duties to exercise its discretion within the confines of applicable law and reasonably explain its ruling. On cross-appeal, the parties have respective burdens to show the ruling rests on reversible error (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564) including to provide adequate briefing (see, e.g., *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [where appellate contentions turn on factual issues, failure to brief all material evidence forfeits contention subject to substantial evidence review]).

II. *Analysis*

The ruling reflects a reasonable exercise of statutory discretion on the fees motion, except on one narrow ground which involves a subset of hourly rates applied by the trial court (discussed *infra*, II.A.4). Other than on that ground, the ruling reasonably explains the court's decisions on (1) the number of hours Nachtrieb's attorneys and paralegals reasonably expended for this matter, (2) reasonable hourly rates to assign to each attorney and paralegal, (3) the court's multiplication of the hours by their

7

corresponding rates, and (4) the court's rejection of Nachtrieb's request to enhance the lodestar fee.

Other than on the one ground we partially reverse on, substantial evidence supports the trial court's underlying factual findings and the parties' do not demonstrate a misapplication of governing law. We discuss the parties' contentions in turn.

A. *Appellants' Contentions*

Appellants assert four grounds for reversal: (1) the trial court failed to consider the relationship between Nachtrieb's level of litigation success and the amount of the attorney fee award; (2) the court imposed what should have been Nachtrieb's burden of proof onto appellants; (3) the court erred with respect to reasonable hours expended by Nachtrieb's attorneys; and (4) there was insufficient evidence for the hourly rates applied by the court. The final ground persuades us to partially reverse.

1. *Success of Nachtrieb's Claims*

First, appellants argue the trial "court fail[ed] to consider the relationship between the extent of the success obtained [by Nachtrieb] and the amount of the attorney[] fee[s]" awarded. As noted, the jury found two individual defendants not liable to Nachtrieb. They were supervisors of appellants Herman and Walpus. The court's ruling briefly discussed some of the litigation involving the supervisors in a paragraph titled "[Nachtrieb]'s Partial Success," which we quote below.

"Under federal law, when determining a prevailing plaintiff's attorney fees in an action for violation of civil rights ([section 1988]), the extent of a plaintiff's success is a crucial factor." (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 989, citing *Hensley, supra*, 461 U.S. at p. 440.) The United States Supreme Court has explained that in some "cases [where some claims are ultimately successful and others unsuccessful,] the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. . . . Such a lawsuit cannot be viewed as a series of discrete claims. Instead the [trial] court should focus on the significance of the overall relief obtained by

8

the plaintiff in relation to the hours reasonably expended on the litigation." (*Hensley, supra*, at p. 435; *Fox, supra*, 563 U.S. at p. 834 ["the presence of . . . unsuccessful claims does not immunize a defendant against paying for the attorney[] fees that the plaintiff reasonably incurred in remedying a breach of his civil rights"].)  In other words, there is an analytical difference between an unsuccessful claim and an unrelated claim.  The former by itself does not require a reduction of a section 1988 fees award.

That is the view the trial court implemented here.  In a section of the ruling titled "[Nachtrieb]'s Partial Success," the court explained the following findings: "[Nachtrieb] would have likely engaged in extensive discovery regarding the supervisor defendants regardless[,] given their involvement with the other individual defendant.  There was sufficient factual overlap of claims to support denial of a reduction in fees on this basis."  Based on this reasonable explanation of the court's view, we reject appellants' contention that it prejudicially failed to consider the relationship between the court's fees award and the extent of Nachtrieb's litigation success.  (*Hensley, supra*, 461 U.S. at p. 437.)

2. *Burden of Proof*

Next, appellants argue "the trial court improperly shifted Nachtrieb's burden to demonstrate the reasonableness of the claimed [fee] hours to [appellants,] to show . . . unreasonableness."  Appellants cite to statements in the ruling which, read in isolation, *could* reflect a mistaken understanding that appellants bore the ultimate "[b]urden of proof" for the fees motion.  (Evid. Code, § 115.)  Read within the context of the broader record, however, we conclude the court applied a burden-shifting analysis that did not transgress any governing law.  (*Cornerstone, supra*, 56 Cal.App.5th at p. 789.)

A motion seeking a section 1988 attorney fee award is properly adjudicated through a burden-shifting analysis in California courts.  (See *Kerkeles, supra*, 243 Cal.App.4th at p. 105 [if fee applicant first produces "satisfactory evidence" then

9

"opposing party '"has a burden of rebuttal"'"]; see also *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 414 [recounting trial court procedural ruling imposing rebuttal burden].)  The movant bears an initial burden of production to make a prima facie showing of all elements necessary for a lodestar fee determination.  (Evid. Code, § 550, subd. (b).)  If the movant carries this burden, it triggers a burden on any opposing party to rebut the showing.  The ultimate burden of proof remains with the movant throughout the adjudication of the motion.  (Evid. Code, § 115.)

The trial court applied a burden-shifting analysis to the fees motion.  As noted, the ruling includes statements that can be read in isolation to support appellants' claim the court mistakenly assumed they bore the burden of proof.  For example, part of the ruling explained:  "[T]he difficulty of applying [appellants'] objections here is [appellants'] lack of pinpointing . . . to the particular time entries involved [in their objections].  As noted, it is the opponent's burden to present the information sufficiently specifically.  This is where the [appellants' opposition] papers are inadequate at times."

Appellants did not raise their present contention in the trial court, despite the fact the court provided a tentative ruling that included the same burden analysis before and after oral argument.  In both versions of the ruling, the court stated "the burden is on the challenging party to point to the specific items challenged," then cited two cases:  *Premier Medical Management Systems Inc. v. California Ins. Guarantee Association* (2008) 163 Cal.App.4th 550, 564 (*Premier Medical*) and *Mallard v. Progressive Choice Ins. Co.* (2010) 188 Cal.App.4th 531, 545 (*Mallard*).  Both cases reviewed attorney fee awards authorized by California's anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16) and neither stands for a proposition that a fee motion opponent should bear the ultimate burden of proof for an award.

At oral argument, appellants' counsel specifically discussed both *Premier Medical* and *Mallard*, arguing only that those cases were factually distinguishable from this matter. For example, counsel argued "the *Premier* case is distinguishable because the opponent of the fees only submitted a transcript of the [anti-SLAPP] motion to strike to object to certain fees" (italics added) and that "[w]ith the *Mallard* case[,] there was no explanation as to why the fees were duplicate." Counsel did so in order to argue by contrast that "[h]ere [i.e., on the fees motion] we have both my declaration as well as [appellants' expert]'s declaration that set[] out the fees that are duplicative and the ones that [appellants] have objection to. These detailed a lot of the [billing] entries [presented by Nachtrieb], and a very few specific examples were provided to the court to give an illustration as to the excessive fees." Further context for this line of argument is provided by the fact the parties' papers filed ahead of oral argument showed there was no controversy on who bore the ultimate burden of proof—i.e., the parties agreed in writing that Nachtrieb bore that burden.

Based on this record, we conclude the burden analysis explained in the ruling did not contradict any governing authority on section 1988 fee motions. (*See Gates v. Deukmejian* (9th Cir. 1992) 987 F.2d 1392, 1397-1398 ["The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits"]; accord, *Blum, supra*, 465 U.S. at pp. 891-892 & fn. 5 [appellate argument by party opposing fees award not considered because party did not present evidence in the trial court]; see also *Quiles v. Parent* (2017) 10 Cal.App.5th 130, 146 ["Generally speaking, the use of California postjudgment procedures to recover attorney fees and costs authorized by a federal statute does not appear to be inconsistent with federal law"]). Notwithstanding some ambiguity in the ruling on the point, appellants have not carried their appellate burden to demonstrate a misapplication of law on the burden shifting analysis applied. (*See Wilson*

11

*v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563 ["it is presumed that the court followed the law"].)

3.  *Reasonable Hours Expended*

Next, appellants argue the trial court "fail[ed] to determine that the awarded hours were reasonably spent" and, in the alternative, that Nachtrieb's evidence was insufficient to support the ruling on reasonable hours expended. The ruling reflects it determined hours expended for nine attorneys and three paralegals after reducing nearly 8,000 hours presented by Nachtrieb by over 900 hours, based on at least 15 discrete points of analysis.

On factual challenges to a trial court's findings on reasonable hours, the United States Supreme Court opined: "We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it." (*Fox, supra*, 563 U.S. at p. 838.) Applicable California appellate principles are wholly consistent with the Court's view: """When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact." [Citations.]' [Citation.] The judgment is presumed to be correct. [Citation.] And we presume that the record contains evidence to sustain every finding of fact. [Citation.] It is the appellant's burden to demonstrate that it does not. [Citation.]" (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658 (*Boeken*); see *People v. Jackson, supra*, 10 Cal.App.4th at p. 22 ["federal 'clearly erroneous' test and [the California] substantial evidence standard of review" are functional equivalents].)

Appellants correctly note that Nachtrieb had a duty on the fees motion to "make a good-faith effort to exclude from [her] fee request hours that [were] excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." (*Hensley, supra*, 461 U.S. at

12

p. 434.)  Indeed, Nachtrieb sought and was granted leave to exceed a motion page limit to address the trial court's explicit concern about duplicative time spent, given the many successions of representation that occurred over many years of litigation.

The record shows that after assessing the parties' arguments on reasonable hours expended by Nachtrieb's attorneys and paralegals, the trial court reasonably explained its ruling on the topic.  (*Perdue, supra*, 559 U.S. at p. 558 [explanation for award ruling must be "reasonably specific".)  For example, the court reduced out-of-state attorney Messing's 951.5 presented hours by 30 as part of its review for "excessive conferring," explaining its view that "a good deal of time . . . [was] spent on nonlegal or nonbillable work, such as engagement letters, discussions of conflicts, coordinating among other attorneys, and administrative work."  In contrast, for out-of-state attorney Cooper, the court explicitly declined to reduce her hours for "[d]uplicative and [e]xcessive [b]illing," explaining its view the hours were reasonable because they were expended as a matter "of getting to know the case as a successive handling attorney who [was] stepping in very late" in the case's timeline.  The court also noted that "[s]ome of [appellants]' concerns [about duplicative and excessive billing were] met with explanations in [Nachtrieb's] reply" briefing.

Appellants' briefing on appeal fails to discuss over 50 pages of papers, including multiple reply declarations, that Nachtrieb filed in the trial court to respond to appellants' opposition filings.  Accordingly, appellants have failed to fairly summarize the evidence that was before the court for its decision on reasonable hours expended and they therefore have not carried their appellate burden to demonstrate insufficient evidence.  (*Boeken, supra*, 127 Cal.App.4th at p. 1658 [an appellant's "burden to provide a fair summary of the evidence 'grows with the complexity of the record'"].)  In any case, we note that to the extent appellants are arguing for a rule that a fees applicant must negate the possibility of duplicative billing as a matter of law, we would reject the contention if we reached it.  (See *Moreno v. City of Sacramento* (9th Cir. 2008)

13

534 F.3d 1106, 1112 ["*some* degree of duplication" is "inherent in the process of litigating over time"].)  In sum, the record supports the court reasonably explained its informed analysis and appellants have not shown an insufficiency of evidence on the court's determinations about hours reasonably expended.

4. *Reasonable Hourly Rates*

Next, appellants argue "[t]he trial court abused its discretion by awarding Nachtrieb attorney[] fees . . . without evidence . . . that the awarded hourly rates were prevailing market rates."  The ruling reflects the court's exercise of discretion on 12 hourly rates to apply to each of Nachtrieb's attorneys and paralegals.  At the outset, we note only seven rates are at issue on appeal because for five of them, the court selected rates that appellants themselves asserted.

For the seven hourly rates at issue here (tabulated below), we apply the substantial evidence standard of review to the underlying factual findings (*Boeken, supra*, 127 Cal.App.4th at p. 1658) and review the trial court's legal conclusions de novo. (*Cornerstone, supra*, 56 Cal.App.5th at p. 789.)  "'[R]easonable fees' under [section] 1988 are to be calculated according to the prevailing market rates in the relevant community." (*Blum, supra*, 465 U.S. at p. 895.)  The United States Supreme Court's most specific guidance on the point is as follows:  "In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates.  To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.  A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate." (*Ibid.*, fn. 11.)

14

Because we review for substantial evidence, we first look for the highest hourly rates presented in the appellate record. (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 94 [evidence viewed in light most favorable to prevailing party]; accord, *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) We tabulate below hourly rate information for the seven attorneys at issue on appeal, in three columns. The left shows the name of each attorney at issue (listed in order of highest rate awarded to lowest), the middle shows the rates awarded by the court, and the right column shows the rates indicated for that attorney in a reference source known as the "Laffey Matrix"[3] that appellants' expert, Robert L. Kaufman, referenced (among three others) to formulate his opinions:

| Attorney | Trial Court's Hourly Rates Implemented | Laffey Matrix Hourly Rates |
|---|---|---|
| *Mathews* | *$750* | *$826* |
| McMillan | $735 | $717 |
| Phillips | $735 | $661 |
| Cooper | $735 | $661 |
| *Messing* | *$600* | *$899* |
| *King* | *$650* | *$742* |
| *Chung* | *$450* | *$658* |

As shown by the table, four hourly rates are supported at the outset by Kaufman's Laffey Matrix information because it presented to the trial court hourly rates that were higher than what the court implemented for Mathews, Messing, King, and

[3] See generally *Tukes v. Richard* (2022) 81 Cal.App.5th 1, 17 (discussing background of reference source).

15

Chung (italicized). For example, although the Laffey Matrix information indicated an hourly rate of $826 for attorney Mathews was reasonable, the court awarded a rate below that benchmark: $750. Accordingly, under the substantial evidence standard of review, there is sufficient evidence in the record to affirm the rates implemented by the court for these four attorneys. It is of no moment that Kaufman's final opinions, based on his synthesis of the Laffey Matrix information with three other sources of information, arrived at blended hourly rates lower than the Laffey Matrix information above.[4] (See generally *In re Scott* (2003) 29 Cal.4th 783, 823 ["[t]he *fact finder* determines the facts, not the experts," and "may reject even 'a unanimity of expert opinion'"].)

This leaves three attorneys at issue: McMillan and out-of-state attorneys Cooper and Phillips. For them, we agree with appellants' position that the trial court's selected hourly rates require reversal. We agree because (1) the court's hourly rates for the three exceeded the highest rates presented in Kaufman's Laffey Matrix information, which we discern are the highest corroborative rates indicated in the record other than the attorneys' own declarations, and (2) we cannot otherwise discern an objective path to arrive at the hourly rates the court selected for the three attorneys.

Relevant to our review, the trial court's ruling discussed its selection of hourly rates as follows: "The [c]ourt proposes to accept [Nachtrieb]'s requested hourly rates for all attorneys involved while recognizing that factors of contingency, delay in compensation and quality of work, may be sufficiently factored in thereby. . . . [¶] . . . [¶] Recognizing that thousands of hours have been presented in this fee claim, where the work is most often sought to be compensated at the highest billing rates and this is so for the successive sets of lawyers involved—this would then be considered in deciding whether the lodestar [fee] is providing adequate compensation for the attorneys performing the services on [a] contin[g]ency basis, under the difficult circumstances of

---

[4] For example, Kaufman's final opinion for Mathews' reasonable hourly rate was $540.

16

the representation and their time spent to achieve the result and other factors. (See *Perdue*[, *supra*,] 559 U.S. [at p.] 55[3] ('We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate."[']); [*ibid.*] ('[T]he . . . complexity of a case generally may not be used as a ground for an enhancement because these factors "presumably [are] fully reflected in the number of billable hours recorded by counsel."[']).")

We read the ruling on hourly rates to mean the court adjusted noncontingent prevailing market rates based on three valid factors: (1) contingency (see *City of Burlington v. Dague* (1992) 505 U.S. 557, 562 ["We note at the outset that an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar"]; (2) delay in compensation (*Perdue, supra*, 559 U.S. at p. 556 ["Compensation for [nonexceptional] delay is generally made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value'"]); and (3) quality of work (*id.* at p. 555, fn. 5 ["as we said in *Blum*[, *supra*], 465 U.S. [at p.] 898 . . . , '[i]n those cases, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates'"]). As a general proposition, we take no issue with the application of the factors to the hourly rates.[5]

But reversal is required by the record here because we cannot verify that the hourly rates selected for attorneys McMillan, Cooper, and Phillips were in line with an

_____

[5] Indeed, we note federal case law on the point has encouraged the approach the trial court took here. (*Morales v. City of San Rafael* (9th Cir. 1996) 96 F.3d 359, 364, fn. 9 ["Adjusting the lodestar on the basis of subsumed reasonableness factors after the lodestar has been calculated, instead of adjusting the reasonable number of hours or reasonable hourly rate at the first step, i.e. when determining the lodestar, is a disfavored procedure"].)

17

objective calculation of rates, such as the information presented by Kaufman's declaration. The attorneys' declarations standing alone were insufficient to amount to "satisfactory evidence . . . that the requested rates [we]re in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[6] (*Blum, supra*, 465 U.S. at p. 895, fn. 11; *ibid.* ["the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits— that the requested rates are in line"]) and, as noted, we cannot otherwise discern an objective path to arrive at the hourly rates the court selected for the three attorneys (*Perdue, supra*, 559 U.S. at p. 558).

We point out we discern nothing facially unreasonable about the hourly rates the trial court applied. On remand, Nachtrieb is entitled to another evidentiary hearing on the hourly rates to apply to an award of fees for attorneys McMillan, Cooper, and Phillips. (See *People v. Barragan* (2004) 32 Cal.4th 236, 248 [discussing effect of law-of-the-case doctrine on new proceeding after remand].)

B. *Nachtrieb's Contentions*

We now address Nachtrieb's two contentions to reverse the trial court's fees award ruling. We conclude she has not demonstrated a ground for reversal.

1. *Fee Enhancement*

Nachtrieb contends the trial court erred when it rejected her request to enhance its lodestar fee through what the parties refer to as a "multiplier." (See *Perdue,*

---

[6] Appellants correctly note the only direct evidence Nachtrieb presented in fees motion regarding Cooper's and Phillips's "hourly rates" were their own respective declarations. Cooper's declaration contained the following assertion, which was effectively the same in Phillips's declaration: "Based on my own independent research of relevant factors, such as the complexity of the case, effort expended, specialized knowledge required for practice in this area, average market rates for attorneys in similar areas of law, my own education, training and experience, and information relayed to me by more experienced attorneys, I believe my reasonable rate of $735 [*sic*]. I believe this is a fair and reasonable valuation under the circumstances of this case."

18

*supra*, 559 U.S. at p. 548 [total fees award can be the product of a lodestar fee multiplied by a "fee enhancement"].)  We exercise our discretion to entertain the issue, notwithstanding appellants' challenge to the scope of Nachtrieb's notice of appeal.  (See *Luz v. Lopes* (1960) 55 Cal.2d 54, 59 ["notices of appeal are to be liberally construed"]; Cal. Rules of Court, rule 8.100(a)(2).)

The trial court explained its ruling on Nachtrieb's fee enhancement request as follows:  "After full consideration of the parties' positions, the [c]ourt finds that the lodestar fees in this case will provide more than adequate compensation to all the attorneys engaged.  In addition to the conservative reduction of the time, that much of the time has been allocated to the highest billing attorneys, the succession of attorneys, and the overlap of attorneys, the hourly rates involved are accounting for the key factors such as contingency, delay, difficulties and skill involved.  It appears that the lodestar [fee alone] is fair compensation for the respective performances and services involved.  As stated in a case that is cited in the papers, 'The Court agrees . . . that this case was taxing, given that it continued for more than ten years and the factual and legal issues were complex, but those factors are already included in the Court's lodestar. . . . [*sic*] while the substantial multiplier requested would encourage public interest suits, the substantial attorney[] fee[] award Plaintiffs' counsel has earned will do so as well.' (*Pierce v. County of Orange* (C.D. Cal. 2012) 905 F.Supp.2d 1017, 1044.)."  (Boldface omitted.)

Nachtrieb asserts the trial court should have enhanced its lodestar fee for Messing's hours expended between the 2014 MSJ grant and our reversal of it in 2017 (*Nachtrieb v. County of Orange, supra*, G050930), for two reasons:  (1) all of the factors that govern whether courts can award a multiplier were satisfied[7]; and (2) the court's

_____

[7]　　　Nachtrieb cites to *Kerr v. Screen Extras Guild, Inc*. (9th Cir. 1975) 526 F.2d 67, 70, abrogated on other grounds by *City of Burlington v. Dague*, *supra*, 505 U.S. 557 (holding lodestar fee cannot be enhanced by risk of nonpayment created by attorney contingency fee agreement).  Nachtrieb states "[t]he full list of factors under *Kerr* for a multiplier are: '1) the time and labor required; 2) the novelty and difficulty of

reasoning for declining to enhance its lodestar fee in general could "not plausibly apply to Messing's [specific] work" between 2014 and 2017.

Two principals we have already noted govern our review of Nachtrieb's contention: (1) "'a reasonable attorney[] fee' is one that is 'adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys'" (*Blum, supra*, 465 U.S. at p. 897); and (2) "there is a 'strong presumption' that the lodestar [fee, without an enhancement,] is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee" (*Perdue, supra*, 559 U.S. at p. 554). To these particular principles we add a general one: "'A merely debatable ruling cannot be deemed an abuse of discretion. [Citations.]' [Citation.]" (*People v. Johnson* (2022) 12 Cal.5th 544, 605.)

No abuse of discretion has been shown because Nachtrieb's assertions amount to debatable points, at most, about the trial court's exercise of discretion. We take no issue with Nachtrieb's characterization of Messing as her hero in the litigation. He successfully argued for a reversal of the 2014 MSJ grant in favor of the defendants and the record reflects Messing remained devoted to Nachtrieb as a client as circumstances proved difficult for him to secure counsel for trial, persevering until he finally was able to introduce attorneys Cooper and Phillips, who the trial court commended for their representation in this matter.

Notwithstanding, none of these points justify a conclusion the trial court abused its discretion in declining to enhance the court's lodestar fee for Messing's efforts,

the questions involved; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the ["]undesirability["] of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.'"

20

especially when it indicated in the ruling on hourly rates that it "factored in" the quality of attorney work put forth. (*Blum, supra*, 465 U.S. at p. 899 [expressing concern for "double counting" an upward adjustment factor when enhancing a lodestar fee].) It does not follow from attorney Messing's skillful devotion that the court's fees award amounts to a market value that will not adequately attract competent counsel from representing other civil rights plaintiffs. (*Blum, supra*, 465 U.S. at p. 897.) We are not persuaded to hold the court was compelled to enhance its lodestar fee.

2. *Pro Hac Vice Admission*

Next, Nachtrieb argues the trial court erred by concluding that 489 hours expended by her out-of-state attorneys—Messing, Philips, and Cooper—should be excluded from the court's attorney fee award because the hours were expended before the attorneys applied (successfully) for *pro hac vice* admission in the trial court (the preadmission hours). Because there are no disputed material facts for the issue, we review the court's legal conclusion on the point de novo. (*Cornerstone, supra*, 56 Cal.App.5th at p. 789; accord, *Koon v. United States, supra*, 518 U.S. at p. 100.)

On *pro hac vice* admission, rule 9.40 of the California Rules of Court authorizes California courts to allow qualifying attorneys not licensed by the State Bar of California "to appear [in a California cause] as counsel *pro hac vice*, provided that an active licensee of the State Bar of California is associated as attorney of record." Otherwise, the Legislature has established that, outside of exceptions not relevant here, "[n]o person shall practice law in California unless the person is an active licensee of the State Bar." (Bus. & Prof. Code, § 6125.) Indeed, pursuant to Business and Professions Code section 6126, it is a misdemeanor to violate the rule. (*Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 127 [affirming in part denial of contractual attorney fees sought].) Enforcing these statutes, the California Supreme Court has plainly stated: "'No one may recover compensation for services as an attorney at law in this state unless [the person] was at the time the services were performed a

21

member of The State Bar.' [Citation.]" (*Ibid*.) In *Golba v. Dick's Sporting Goods, Inc.* (2015) 238 Cal.App.4th 1251 (*Golba*), we applied *Birbrower* to a request for an out-of-state attorney's fees based on a state class action statute. (*Golba*, at pp. 1255-1256.) We held the request was properly denied because the attorney had not been admitted *pro hac vice* when he performed his underlying work for the case (*id.* at p. 1255; the *Golba* rule), also noting the case facts negated a conclusion the attorney would have been admitted as a matter of course (*id.* at p. 1266).

In the relevant portion of the ruling in this case, the trial court considered *Golba*, relied on by the appellants, alongside a federal appellate opinion presented by Nachtrieb, *Winterrowd v. American General Annuity Ins. Co.* (9th Cir. 2009) 556 F.3d 815 (*Winterrowd*). In *Winterrowd*, a split panel of the Ninth Circuit Court of Appeals reversed in relevant part a district court's denial of attorney fees sought under a California statute, Labor Code section 218.5. (*Id.* at p. 818.) The Oregon attorney at issue represented plaintiffs in a California federal district court. (*Ibid.*) Although he had not secured *pro hac vice* admission, it was undisputed on appeal he would have been admitted if he had applied. (*Id.* at p. 823.) The panel established a rule that an attorney fee award may rest on attorney work performed before *pro hac vice* admission, so long as one of two conditions is met: (1) "if the attorney at issue would have certainly been permitted to appear *pro hac vice* as a matter of course had he or she applied" or (2) the attorney's "conduct did not rise to the level of 'appearing'" before the court at issue. (*Id.* at pp. 822-823.)

Here, the trial court discussed the parties' respective reliances on the cases for their dispute about whether the preadmission hours were awardable, as follows: "[Nachtrieb] refers to the *Winterrowd* case (556 F.3d 815) but that would not sufficiently address the matter [because] the federal court was deciding on a matter of practice in the federal courts. (See *Golba*[*, supra*,] 238 Cal.App.4th [at p.] 1269) (noting the distinction [in discussing *Winterrowd*])." The court concluded: "Based on the papers presented,

22

[appellants] appear to have the better argument and it would support a reduction of fees in this regard."

Neither *Golba* nor *Winterrowd* is directly applicable to Nachtrieb's argument here. In addition to *Winterrowd*'s nonbinding character in general (*Flannery v. Prentice, supra*, 26 Cal.4th at p. 579 ["We are of course not bound by lower federal appellate decisions"]), both decisions enforced a state and not federal statute (*Winterrowd, supra*, 556 F.3d at p. 818 [Cal. Labor Code]; *Golba, supra*, 238 Cal.App.4th at p. 1256 [Song–Beverly Credit Card Act of 1971 (Civ. Code, § 1747 et seq.)]; see generally *Johnson v. Fankell* (1997) 520 U.S. 911, 916 ["Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State"].) Read side by side, *Golba* and *Winterrowd* simply agree the practice of law in federal courts is regulated by federal legal authorities and practice in state courts is regulated by state authorities. Their shared rationale indicates no error here in the trial court's view of the law.

On appeal, Nachtrieb contends the trial court mistakenly concluded it was bound by *Golba*. Her argument for reversal is premised on a construction of section 1988 that would define the word "attorney" independent of bar membership as well as a theory of federal obstacle preemption. "'The supremacy clause of the United States Constitution establishes a constitutional choice-of-law rule, makes federal law paramount, and vests Congress with the power to preempt state law.' [Citations.] 'Congress may exercise that power by enacting an express preemption provision, or courts may infer preemption under one or more of three implied preemption doctrines: conflict, obstacle, or field preemption.' [Citation.] [¶] In both express and implied preemption cases, whether preemption will be found in a given case depends foremost on congressional intent. [Citations.] Significantly, we begin with a presumption against preemption and will override that presumption only when Congress has made "'clear and

23

manifest"' its intent to displace state law with federal law. [Citations.]" (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1048.)

We are not persuaded by Nachtrieb's argument to discern an implied preemption of the *Golba* rule. As quoted earlier, section 1988, subdivision (b), plainly provides in relevant part that "[i]n any action or proceeding to enforce a provision of [section 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney[] fee as part of the costs."

We do not infer a congressional intention for state courts to disregard their state's laws on admission to practice law conditioning attorney fee awards. Our reading is reinforced by Congress' explicit instruction to federal courts, in the section's preceding subdivision, to implement state rules as part of enforcing the broader Civil Rights Act statutory scheme. (See *Robertson v. Wegmann* (1978) 436 U.S. 584, 588 [§ 1988(a), "instructs us to turn to 'the common law, as modified and changed by the constitution and statutes of the [forum] State,' as long as these are 'not inconsistent with the Constitution and laws of the United States.'"]; see also *id.* at p. 590 ["In resolving questions of inconsistency between state and federal law raised under § 1988, courts must look not only at particular federal statutes and constitutional provisions, but also at 'the policies expressed in [them]'"]; accord, *Wilson v. Garcia* (1985) 471 U.S. 261, 279, superseded by statute [Court directing federal courts to borrow respective state personal injury statutes of limitations for section 1983 claims]; see *id.* at p. 275 [federal interest in uniformity satisfied by borrowing of respective state rules].)

We are not persuaded to conclude section 1988(b)'s authorization for trial courts to award "a reasonable attorney's fee" implicitly preempts the *Golba* rule as an obstacle. Nachtrieb presents no case law holding so, nor does she present any case authorities otherwise construing the subdivision as requiring courts to disregard state laws on admission to practice law analogous to the *Golba* rule.

24

The most relevant case Nachtrieb presents for our review is *Felder, supra*, 487 U.S. 131. There, the United States Supreme Court reversed a Wisconsin Supreme Court holding that a section 1983 action filed in a Wisconsin state court was barred by a plaintiff's failure to satisfy the state's "notice-of-claim" statute. (*Id.* at pp. 134, 136, 141 [statute required notice of claim be delivered to governmental defendant within four months of injury whereas general tort statute of limitations for lawsuit filing was two years].)

The *Felder* majority reasoned a "'federal right cannot be defeated by the forms of local practice' [citation]" (*Felder, supra*, 487 U.S. at p. 138) and held: "Because the notice-of-claim statute at issue here conflicts in both its purpose and effects with the remedial objectives of [section] 1983, and because its enforcement in such actions will frequently and predictably produce different outcomes in [section] 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is pre-empted when the [section] 1983 action is brought in a state court" (*id.* at p. 138).

As just quoted, *Felder*'s holding rests on a two-part analysis. For its first part, the Court analyzed the notice-of-claim statute's relationship to the "purposes" of section 1983 as well as the state statute's "effects" on the remedial objectives of the federal statute. (*Felder, supra*, 487 U.S. at pp. 141-142.) At the heart of the analysis is a non-neutral state statute that favored governmental defendants over plaintiffs and thereby effected a "substantive burden" (*id.* at p. 141) on plaintiffs' abilities to litigate their section 1983 rights (*id.* at p. 147). The Court explained the statute (1) "minimize[d] governmental liability" and therefore was "inconsistent with the purposes of the federal statute"; (2) "discriminate[d] against the federal right"; and (3) "operate[d], in part, as an exhaustion requirement, in that it force[d] claimants to seek satisfaction in the first instance from the governmental defendant." (*Id.* at pp. 141-142.)

25

None of the above analytical points are implicated here. In contrast, the *Golba* rule is neutral and uniform in its application to both plaintiffs and defendants. The rule also does not have any direct effect on whether a plaintiff will be able to have her substantive day in court, as the notice-of-claim statute did in *Felder*. Instead, the *Golba* rule covers a prevailing-party's attorney fee request that can only be sought after disputes about covered civil rights have been resolved.

The *Golba* rule does not obstruct the purposes of section 1988 nor does the rule create effects on the objectives of the statute in the same way the notice-of-claim statute did in relation to section 1983, as analyzed by the *Felder* majority. Through section 1988, Congress has expressed a policy goal of "effective access to the judicial process" for the covered civil rights statutes (H.R. Rep. No. 94-1558, 94th Cong., 2d Sess., at p. 1 (1976)) and we are not persuaded the *Golba* rule obstructs Congress' intention for how that policy is to be enforced (see *Perdue, supra*, 559 U.S. at p. 552 ["a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case"]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [appellant bears burden to show miscarriage of justice]).

Given our conclusion that the first part of *Felder*'s analysis does not apply here, we do not decide whether its second part, which considered how the "ultimate outcome" of a case would be influenced by a state rule (*Johnson v. Fankell, supra*, 520 U.S. at p. 912 [expounding on *Felder* analysis]), compels any conclusion for Nachtrieb's preemption argument. In sum, based on the congressional intent inferred from the text of section 1988 and our review of *Felder*, we are not persuaded that Nachtrieb has overcome the general presumption against preemption in this case. (*Jankey v. Lee, supra*, 55 Cal.4th at p. 1048.)

III. *Fees on Appeal and Cross-appeal*

Finally, to avoid confusion below about our award of costs on appeal, we preface it by noting it has no bearing on entitlement to section 1988 attorney fees. (Cal. Rules of Court, rule 8.278(d)(2) ["Unless the [appellate] court orders otherwise, an award of costs neither includes attorney's fees on appeal nor precludes a party from seeking them under rule 3.1702"]; see rule 3.1702 [civil trial court claims for "statutory attorney's fees"].)

DISPOSITION

The ruling awarding Nachtrieb attorney fees pursuant to section 1988 is reversed only as to the fees awarded for attorneys McMillan, Cooper, and Phillips. The matter is remanded for further proceedings to be conducted consistent with the views expressed in this opinion. In all other respects, the ruling is affirmed. Appellants are awarded costs recoverable pursuant to California Rules of Court, rule 8.278(d)(1).

O'LEARY, P. J.

WE CONCUR:

GOETHALS, J.

SANCHEZ, J.

27